Harvey O. WALLACE, Appellant,

v.

TRANSPORT LIFE INSURANCE
COMPANY, Appellee,

and

Oklahoma Farmers Union Mutual
Insurance Company,
Defendant.

No. 76208.

Court of Appeals of Oklahoma,
Division No. 1.

Feb. 25, 1992.

Rehearing Denied April 13, 1992.

Certiorari Denied Nov. 17, 1992.

Wallace Coppedge, Tishomingo, for appellant.

J. Eric Turner, Oklahoma City, for appellee.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

Harvey O. Wallace (Wallace) was employed by Oklahoma Farmers Union Mutual company (Farmers). In August, 1984, at the age of 46, he became disabled due to heart disease and unable to work. Farmers provided a group disability insurance plan (Plan) through Transport Life Insurance Company (Insurer). In essence, the Plan provided that 90 days after disability, it would pay sixty percent (60%) of Wal-

lace's salary until he reached sixty five (65) years of age.

The Plan contained the qualifying provision:

> If an insured employee is entitled to other income benefits, as defined below, or if such income benefits become payable to the insured employee, his spouse, child, parent or other auxiliary, for the same period of disability for which a Monthly Benefit is payable hereunder, then the amount of the Monthly Benefit payable will be reduced by the amount of the following other income benefits:
>
> \*   \*   \*   \*   \*   \*
>
> (6) any amount provided or available (Primary and Family Benefits), or which would have been provided or available if an application for the same were approved under the United States Social Security Act ...

(Plan, page 11, Section 9, Subsections 2 and 2(6)).

After the ninety (90) day period, Insurer paid sixty (60%) of Wallace's salary from December, 1984, to March, 1987. In April, 1987, Insurer did not make the payment. Instead, it demanded that Wallace sign a letter agreeing to apply for Social Security benefits as an offset against the amounts payable under the Plan. Wallace signed the letter, applied for and began to receive Social Security benefits. Payments also began for his wife and child. Insurer further notified Wallace that his prior lengthy delay in seeking Social Security benefits had created an offset against the future Plan payments.

Wallace filed an action against Farmers (not a party to this appeal) and Insurer, asserting causes of action against Insurer for recovery of Plan payments not made since April, 1987, emotional distress, mental pain and suffering and, damages for bad faith and unfair dealing by Insurer. Wallace asserted that he was coerced into seeking Social Security benefits. Insurer counterclaimed for the amount of alleged overpayment, that is, the difference in the amount Insurer actually paid and the amount Insurer should have paid, if Wallace had applied for and received Social

Security benefits when he first became disabled and qualified.

Insurer moved for summary judgment in three motions. The trial court granted the three motions. In its first order, the trial court held the Plan to be within the scope of the Employee Retirement Income Security Act (ERISA) 29 U.S.C. § 1001 et seq., and, that the federal legislation was preemptive. The trial court granted partial summary judgment to Insurer on Wallace's claim for bad faith, emotional distress and punitive damages, finding these to be subject to the ERISA provisions and must be maintained in federal court. The trial court retained the questions of recovering benefits due, enforcing rights and clarifying future benefits under the Plan. The State courts have been granted concurrent jurisdiction with federal courts to determine and enforce rights under an insurance plan covered by ERISA. See 29 U.S.C. § 1132(a)(1)(B). In its second order, the trial court held Insurer was entitled to the difference between the Plan payments actually made by Insurer and that which would have been due if Wallace, his wife, or child, had made application for Social Security benefits when eligible as required by the Plan provisions. The trial court found the Plan provisions requiring Wallace to apply for Social Security or other benefits to be clear, unambiguous and not in violation of public policy. The trial court also held that a money judgment was due to Insurer against Wallace, but did not set an amount, because it found that there was not sufficient evidence to do so. In its third and final order, the trial court determined the amount of the money judgment, and entered judgment for that amount.

While Wallace does not dispute ERISA's application, he contends an exception is made by 29 U.S.C. § 1003(b)(3) which provides:

> Provisions of this sub-chapter shall not apply to any employee benefit plan if ... such plan is maintained solely for the purpose of complying with applicable workers' compensation laws or unemployment compensation or disability insurance laws;

The other types of employee benefits mentioned in § 1003(b)(3) are comprehensively regulated by Oklahoma. See Title 85, Oklahoma Statutes, as to Workers' compensation; and, Title 40, Oklahoma Statutes, as to unemployment compensation. There are no such corresponding statutes dealing with disability insurance. While several states, California, Rhode Island, New York and New Jersey, have enacted comprehensive disability insurance statutes, Oklahoma is not among them.

■ Wallace contends that Rule 72 of the Minimum Standards and Benefits for Accident and Health Insurance (Rule 72) of the State Insurance Commissioner is the applicable disability insurance law which exempts him from ERISA compliance. Rule 72 was promulgated by the State Insurance Commissioner pursuant to 36 O.S.Supp. 1990 § 3611(B)(4) which reads:

> The department [Insurance Commission] shall adopt rules and regulations which establish minimum standards of benefits and identification for each of the following categories of coverage in individual and family forms, other than conversion policies, of accident and health insurance:
>
> a. Basic hospital expense insurance,
> b. Basic medical expense insurance,
> c. Basic surgical expense insurance,
> d. Hospital confinement indemnity insurance,
> e. Major medical expense insurance,
> f. Disability income protection insurance,
> g. Accident-only insurance, and
> h. Limited benefit insurance.

However, Rule 72 is not a State law as contemplated by the exemption in § 1003(b)(3). It is inapplicable to the Plan. By its own terms, it applies only to an *individual* policy. See § 3 of Rule 72 entitled "Applicability and Scope". The plan is a group disability policy.

The trial court correctly held: (1) the Plan was within the scope of ERISA; (2) Oklahoma has no applicable regulatory requirements or statutes pertaining to the Plan other than those dealing with recovery of benefits, enforcing rights and clarifying future benefits; and, (3) State laws to the contrary must yield to the federal. See *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) and *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ Wallace next contends that the Plan's terms are ambiguous and vague as to the provision allowing the offset for Social Security benefits. He claims the above quoted language in the Plan[1] is inconsistent with a previous clause which states:

> If an insured employee becomes totally disabled as a result of sickness or injury, and requires the regular attendance of a physician, the Company will pay the Monthly Benefit following the Elimination Period during the continuance of disability, for a period not to exceed the Maximum Benefit Period. The Monthly Benefit and the Maximum Benefit Period are shown in the Schedule of Benefits (Section 8).
>
> (Plan, page 11, Section 9, Subsection 1).

The language of Subsection 2 and 2(6) immediately follow the statement of benefits to limit its scope. There is no ambiguity. The Plan clearly provides for a reduction of disability payments as a result of Social Security benefits, if a claimant is entitled to Social Security.

■ Wallace alternatively contends: if this offset provision applies, it should be held void as against public policy. The effect of a reduction in pension plans as offset by Social Security benefits was discussed in *Alessi, et al. v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, supra. The practice was called: "integration". In discussing 29 U.S.C. 1054(b), which allows a plan under ERISA to incorporate the Social Security benefits paid, the *Alessi* Court said:

> It is particularly pertinent for our purposes that Congress did not prohibit "integration", a calculation practice under which benefit levels are determined by

---

1. Plan, page 11, section 9, subdivisions 2 and 2(6).

combining pension funds with other income streams available to the retired employees. Through integration, each income stream contributes for calculation purposes to the total benefit pool to be distributed to all the retired employees, even if the nonpension funds are available only to a subgroup of the employees. Under this practice, an individual employee's eligibility for Social Security would advantage all participants in his private pension plan, for the addition of his anticipated Social Security payments to the total benefit pool would permit a higher average pension payout for each participant. The employees as a income maintenance source. In addition, integration allows the employer to attain the selected pension level by drawing on the other resources, which, like Social Security, also depend on employer contributions.

*Alessi* at 514, 101 S.Ct. at 1901–02.

While the Oklahoma courts have not expressly considered the question of public policy, the Oklahoma Supreme Court has discussed the fact that many accident and health policies contain offset provisions such as Wallace complains of here. See *Aetna Casualty & Surety Co. v. State Board,* 637 P.2d 1251 (Okl.1981); and, *Christian v. Metropolitan Life Insurance Co.,* 566 P.2d 445 (Okl.1977). We find no violation of public policy.

Wallace contends that the third Motion for Summary Judgment filed by Insurer was so similar to its second Motion for Summary Judgment that it constituted a Motion to Reconsider. However, while the facts in each motion were substantially similar, they were presented differently. Wallace cites no authority, and we know of none, that a motion for summary judgment cannot be refiled if previously denied. Here, the trial court did not deny Insurer's Second Motion for Summary Judgment, but granted it in part and denied it in part, because it found that an exact amount could not be set as the facts presented were insufficient. When the facts were presented in more detail in Insurer's Third Motion for Summary Judgment, including a prayer for the exact amount due, the trial court was able to set an amount. There is no error here.

Finally, Wallace contends the amount of the judgment granted to be incorrect as the amount of overpayment was calculated by the incorrect number of months. This constitutes a scrivenor's error which was corrected by the Insurer's Reply Brief to the Wallace's Response to the Third Motion for Summary Judgment. Further, Wallace raises this issue for the first time on appeal and therefore consideration of the issue by this Court would be inappropriate. *Nu-Pro, Inc. v. G.L. Bartlett & Co.,* 575 P.2d 618 (Okl.1977).

AFFIRMED.

BAILEY and ADAMS, JJ., concur.