[No. A115921. First Dist., Div. One. Oct. 1, 2007.]

TIFFANY SUMUEL et al., Plaintiffs and Appellants, v. ADVO, INC., et al., Defendants and Respondents.

## COUNSEL

Dumont Law Offices, Mary T. Dumont; Donald L. Tasto; and Jay B. Koslofsky for Plaintiffs and Appellants.

Winston & Strawn, Jonathan M. Cohen and Krista M. Enns for Defendants and Respondents.

## OPINION

**MARGULIES, J.**—Plaintiffs Tiffany Sumuel and Rudy Halim, on behalf of a class of employees and former employees of ADVO, Inc. (ADVO), sued ADVO and one of its managers for unpaid overtime compensation and monetary penalties. On cross-motions for summary judgment or summary adjudication, the trial court granted summary judgment to ADVO. The issue raised by this appeal is whether ADVO's paid disability leave policy and practices violated the "salary basis test" utilized under federal and state labor regulations to determine whether an employee is exempt from overtime pay requirements. We find no error in the trial court's determination of this issue, and affirm the judgment in favor of ADVO.

## I. BACKGROUND

### A. *Plaintiffs' Fourth Amended Complaint*

Plaintiffs' fourth amended complaint alleges class claims against ADVO for (1) unpaid overtime compensation in violation of California Industrial

Welfare Commission (IWC) wage order No. 4-2001 and California Labor Code sections 510, 1194, and 1198; (2) violation of Business and Professions Code section 17200, based on misclassifying class members as exempt from overtime; and (3) monetary penalties under Labor Code section 2699 based, among other things, on ADVO's failure to pay overtime.[1]

The complaint alleged that ADVO was in the business of producing direct mail coupon packages, and that it employed approximately 170 employees in California who were paid on a salary basis by ADVO and treated as exempt from the requirement to pay overtime. Plaintiffs alleged that during the period covered by the suit—March 15, 2000, to December 20, 2005—another 200 California employees classified by ADVO as salaried had been terminated from the company's employment. They alleged that ADVO repeatedly made various impermissible deductions from its employees' salaries, including deductions made when employees were out of work due to illness, that were inconsistent with and rendered unlawful ADVO's treatment of the employees as exempt from overtime.

B. *Law and Facts Regarding Cross-motions for Summary Judgment*

Plaintiffs moved for summary adjudication that ADVO had a statutory duty to pay class members overtime and for a judgment compelling ADVO to disgorge all unlawfully withheld wages. ADVO filed a cross-motion for summary judgment or summary adjudication seeking a determination as a matter of law that its sick leave and short-term disability policy and practices did not affect the exempt status of its salaried employees.[2]

The motion and cross-motion centered on the application of a federal Department of Labor (DOL) regulation, known as the "salary basis" test, which establishes permissible deductions from exempt employees' salaries

---

[1] "The Legislature has commanded that '[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.' (Lab. Code, § 510, subd. (a).) The [IWC], however, is statutorily authorized [through its wage orders] to 'establish exemptions from the requirement that an overtime rate of compensation be paid . . . for executive, administrative, and professional employees . . . .' (*Id.*, § 515, subd. (a).)" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 324 [17 Cal.Rptr.3d 906, 96 P.3d 194].) The Legislature defunded the IWC in 2004; however its wage orders remain in effect. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102, fn. 4 [56 Cal.Rptr.3d 880, 155 P.3d 284].) Wage order No. 4-2001 is codified at California Code of Regulations, title 8, section 11040.

[2] ADVO's cross-motion and the trial court's summary judgment order also addressed other improper deduction theories alleged by plaintiffs, including unpleaded theories plaintiffs first raised in their summary judgment motion. Because the only issues plaintiffs raise in this appeal pertain to ADVO's sick leave and short-term disability policies for salaried employees, our background summary will be confined to matters relevant on those issues.

under the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) (FLSA).[3] The relevant provisions of the pre-2004 version of the federal salary basis regulation are as follows, with the most pertinent provisions italicized: "An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period . . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. *Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.* This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work. [¶] . . . [¶] (3) *Deductions may also be made for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability.* Thus, if the employer's particular plan, policy or practice provides compensation for such absences, deductions for absences of a day or longer because of sickness or disability may be made before an employee has qualified under such plan, policy or practice, and after he has exhausted his leave allowance thereunder. It is not required that the employee be paid any portion of his salary for such days or days for which he receives compensation for leave under such plan, policy or practice. *Similarly, if the employer operates under a State sickness and disability insurance law, or a private sickness and disability insurance plan, deductions may be made for absences of a working day or longer if benefits are provided in accordance with the particular law or plan. . . .*" (29 C.F.R. § 541.118(a) (2004), italics added.)[4]

The relevant facts and evidence in the record as to ADVO's sickness and disability policies for its salaried employees may be summarized as follows.

ADVO gave its California employees an unlimited number of sick days with pay unless the employee was going to be out for more than seven

---

[3] Three tests are relevant under the FLSA to determining whether an employee is properly exempt from overtime requirements: the " 'salary basis' " test, the " 'duties' " test, and the " 'salary level' " test. (*Klem v. County of Santa Clara, California* (9th Cir. 2000) 208 F.3d 1085, 1089–1090.) Only the salary basis test is at issue in this case.

[4] Although the parties agree that the federal salary basis test should be used in determining whether any impermissible deductions were made in this case, they differ over whether the applicable regulation is the new version of the regulation adopted in 2004 (found at 29 C.F.R. § 541.602 (2006)) or the pre-2004 version (29 C.F.R. former § 541.118 (2004) (hereafter part 541.118)). Although the two versions do differ substantively in certain respects, those differences are not material to the issues before us. Accordingly, we will base our analysis on the pre-2004 version of the regulation.

consecutive days. In that case, he or she was encouraged to apply for State Disability Insurance (SDI) benefits.[5,6] If approved by ADVO's third party disability insurer, the employee would also receive supplemental salary replacement benefits after being out for seven consecutive days that, when added to the employee's weekly SDI benefits, would replace 100 percent of the employee's base salary for 13 weeks, and would pay 75 percent of his or her salary for an additional 13 weeks after that.[7] If an employee began his or her disability period in the middle of a workweek, the employee would only receive regular salary for the days he or she worked that week. Thus, if an employee was out sick for part of a week, the employee would receive a full week's pay. But if the employee knew that he or she was going to be out for more than seven consecutive days, the employee would be taken off of the regular payroll effective on the first day out of work, even if he or she had already worked one or more days that week.

The process for obtaining short-term disability benefits was different for California employees than for ADVO's employees in other states. No supplemental salary replacement benefits would be made until after the employee submitted to ADVO a copy of his or her first SDI weekly benefit check, and the insurer had given medical approval to the employee's disability claim. The employee would ultimately receive supplemental salary replacement benefits in an amount sufficient, together with SDI benefits, to replace his or her salary for the full period of the disability (up to the 13-week maximum), but payment could be delayed for weeks due to delays in submitting or

---

[5] There was conflicting evidence in the record as to whether ADVO's short-term disability program kicked in after seven consecutive days of absence due to illness, or three consecutive days. Most of the evidence in the record, including ADVO's declarations and documentary evidence submitted by plaintiffs, supports the seven-day cutoff. Neither side has argued that the conflict of evidence on this point is material.

[6] California's SDI program is authorized by section 2601 et seq. of the Unemployment Insurance Code. It provides partial compensation—roughly at a rate of 55 percent—for wage loss sustained by an employee who is unable to work due to illness or injury. (Unemp. Ins. Code, §§ 2601, 2655.) With certain exceptions, the program is mandatory for private California employers, and is funded by mandatory employee contributions. (Unemp. Ins. Code, §§ 984, 2606, 2901, 3251 et seq.) An eligible employee receives one-seventh of his or her weekly benefit amount for each full day of unemployment due to a disability, after a seven-day waiting period. (Unemp. Ins. Code, § 2627.) California is one of a few states that provide wage loss benefits to employees who are unable to work, outside of the workers' compensation system. (See 1 Bogue et al., Advising Cal. Employers and Employees (Cont.Ed.Bar 3d ed. 2005) Unemployment and State Disability Insurance, § 8.162, p. 740; *Standard Oil Co. of California v. Agsalud* (N.D.Cal. 1977) 442 F.Supp. 695, 701; *Wallace v. Transport Life Ins. Co.* (1992) 1992 OKCIVAPP 20 [841 P.2d 613, 614–615].)

[7] If an employee's SDI application was denied, ADVO apparently would still pay the full 100 percent of the employee's salary, assuming the disability leave was medically approved by ADVO's disability insurance carrier.

processing the necessary medical reports and paperwork. These delays sometimes caused frustration and complaints by ADVO employees out on disability, including complaints that they could not pay their bills.

In some instances, there were also delays in getting an employee restored to the active payroll after a return from disability leave, although the employee would ultimately receive his or her full salary for all weeks worked following his or her return from disability. In calculating the amount of an employee's salary replacement benefit, ADVO would offset the full weekly benefit amount shown on the SDI check stub submitted by the employee rather than the actual amount of the employee's SDI check. If the amount of the check was less than the weekly benefit amount, this method of calculating ADVO's supplemental payment would result in a small shortfall in full salary replacement for that partial week of disability.[8]

ADVO's personnel policies were written and distributed from company headquarters in Windsor, Connecticut. Benefits information given to ADVO employees described the company's short-term disability plan as a "company paid" benefit providing the employee with "a continuation of your pay." The company did not have a policy of informing California employees in advance of a disability that they would have to first apply for SDI benefits, and that their salary replacement benefits might be subject to delays while the necessary paperwork was being completed. Of the 435 class members, 57 or 58 received disability benefit payments from ADVO during the period covered by the lawsuit, and the total amount of ADVO's payments to them was $475,157.76. Of those class members who received disability benefits, 32 experienced delays in the payment of benefits, ranging from four to 14 weeks, according to plaintiffs' accounting expert.

## C. Trial Court Decision

The trial court found that there was no triable issue of material fact as to whether ADVO made any impermissible deductions for absences related to illness. The court found no evidence that class members had deductions taken from their salaries that were not covered by the salary replacement benefits of either state disability insurance, or ADVO's short-term disability insurance. The court further found that plaintiffs' evidence consisted of statements that

---

[8] Plaintiffs produced evidence that Sumuel submitted a copy of her SDI check in the amount of $516 to ADVO when she took disability leave in 2003. This reflected the six days of disability benefits that SDI covered. However, ADVO deducted her full weekly SDI benefit amount of $602 in calculating her supplemental salary replacement benefit. This resulted in an $86 shortfall from full salary replacement for her six days of disability leave. There was no evidence that Sumuel ever called the shortfall to ADVO's attention, that ADVO refused to correct it, or that any other employee experienced the same problem.

employees out on disability leave were subject to delays in receipt of disability benefits. It held that such delays in receiving benefits, or miscalculations in the amount of benefits owed did not constitute impermissible salary deductions. Finally, the court held that in any event ADVO's disability program operated under both a state disability and private disability plan, permitting deductions for absence in accordance with the federal salary basis regulation. The court granted ADVO's motion for summary judgment and denied plaintiffs' motion for summary adjudication as moot.

Plaintiffs timely appealed from the ensuing judgment.

## II. DISCUSSION

Plaintiffs contend that ADVO's disability policies and practices failed to satisfy the salary basis test in the following respects: (1) ADVO employees who returned to work after an illness were not paid their regular salaries until payroll received the proper documentation confirming that the employees had returned to work; (2) ADVO deducted improper amounts from the employees' company-paid disability benefits based on imputed SDI benefits that the employees did not actually receive; (3) ADVO did not pay a full week's salary to employees who worked a partial week before going out on short-term disability leave; (4) ADVO's plan did not qualify as a bona fide plan because it did not operate as described to its employees, it was not administered impartially, and it relied in part on state disability payments funded by its employees; (5) ADVO's plan was not operated under state disability law; and (6) ADVO had no objective intent to pay its employees on a salary basis because it did not train and direct its responsible human resources employees to ensure that no improper deductions were made. (Hereafter referred to as issues 1, 2, 3, 4, 5, and 6.)

### A. *Salary Delays and Imputed SDI Benefits*

██ We agree with the trial court that issues 1 and 2 above involve no arguably improper deduction for purposes of the salary basis test. Issue 1 is simply a claim that some employees experienced a *delay* in receiving their normal biweekly salary payments when they returned from disability leave.[9]

---

[9] The only employee-specific evidence of this in the record was the declaration of Sumuel in which she stated that she returned from disability leave on April 7, 2003, but did not receive a regular paycheck until June 5, 2003. However, the record shows that she also received manually cut paychecks on May 9 and May 23, which indicates that she missed one biweekly payday. A former ADVO human resource manager submitted a declaration for plaintiffs stating that the process of restoring an employee to regular payroll "could take several days, and could take significantly longer. . . . often for more than one pay period," due to delays in routing the paperwork.

There was no evidence that any employee was not ultimately paid in full for weeks worked after returning from disability. A paperwork *delay* in resuming an employee's salary payments following a return to regular payroll status cannot reasonably be equated to a *deduction* from salary.

■ But plaintiffs also claim that such delayed payment, even if not a deduction from salary, violates the fundamental requirement of salaried employment that the employee "*regularly receive*[] each pay period . . . a predetermined amount." (29 C.F.R. § 541.118(a), italics added.) We are not persuaded. No biweekly payroll system for a company of significant size can ensure that paychecks will not sometimes be delayed when an employee is restored to the regular payroll following a return from disability or other types of leave. Such departures from precise regularity are no more antithetical to the concept of salaried compensation than payroll lags incident to an employee changing jobs or receiving a promotion or pay raise would be. As long as an employee in fact receives a predetermined salary for each pay period that he or she works, such one-time deviations from the employee's regular pay schedule do not in themselves destroy the employee's salaried status. Plaintiffs cite no authority to the contrary on this point.

■ Issue 2 refers to plaintiffs' claim that the company would base its calculation of salary replacement benefits during a disability period on the SDI weekly benefit amount shown on the pay stub submitted by the employee, rather than determining the actual amount of the SDI benefit payments the employee received. If the actual check was for less than a full week of SDI benefits, the amount of the replacement benefit for that week, together with the SDI check, would not make up the full amount of the employee's regular salary. The trial court correctly held that issue 2 has to do with the asserted miscalculation of a disability *benefit*. The underpayment or miscalculation of a *benefit* is not a deduction from *salary*, and therefore does not normally implicate the salary basis test. (See *Webster v. Public School Employees of Washington* (9th Cir. 2001) 247 F.3d 910, 917 [deduction from fringe benefits is not a deduction from salary under the salary basis test].) No evidence of a deduction from *salary* in violation of the salary basis test was shown in connection with that claim.

B. *Deduction for Partial Week's Work*

Issue 3, in contrast, does involve a deduction from salary. Under part 541.118(a), "the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." (Accord, 29 C.F.R. § 541.602(a) (2006).) We construe this to mean that—unless one of the part 541.118(a) exceptions applies—if a salaried employee works even one day of a workweek before going out on disability,

he or she must be paid a full week's salary for that week. Therefore, ADVO's policy of stopping an employee's regular salary immediately when the employee began a disability leave in the middle of a workweek would amount to an improper deduction from salary, unless done in compliance with part 541.118(a)(3).[10]

■ Under ADVO's disability program, an employee's salary is stopped as of the first day of disability so that the employee can begin the seven-day waiting period before he or she qualifies for SDI. When an employee is absent due to an illness expected to last more than seven consecutive days, and the employee's illness occurs before the end of the workweek, paying salary or sick leave for the rest of the week would have the effect of postponing that employee's eligibility for salary replacement benefits under both SDI and ADVO's disability program. Part 541.118(a)(3) specifically allows an employer who maintains a bona fide disability benefits plan for its employees to deduct salary for absences of a day or more "before an employee has qualified under such plan."[11] Thus, ADVO's policy of stopping salary payments as of the first day of a disability period would not violate the salary basis test if its disability plan qualified as bona fide under the regulation. We turn to that issue next.

## C. *Bona Fide Plan*

■ The salary deductions allowed by part 541.118(a)(3) must be made in accordance with a "bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability." Issue 4 pertains to whether ADVO's short-term disability plan qualifies as "bona fide" for purposes of part 541.118(a)(3).

■ A January 7, 2005 DOL opinion letter provides the following guidance as to the meaning of "bona fide" in this context: "[A] plan that has defined sick leave benefits which have been communicated to eligible employees, and that operates as described in the plan, will in general qualify

---

[10] ADVO apparently does not dispute that it took employees off of the regular payroll in midweek if they began a disability leave at that time. We note that disability periods that began on the first day of a workweek would not raise the same issue because under part 541.118(a), "an employee need not be paid for any workweek in which he performs no work." We have found no evidence in the record as to how many of the 57 employees who took disability leave during the class period began their leave after working one or more days of a workweek.

[11] The new regulation, 29 Code of Federal Regulations part 541.602(b)(2) (2006), includes the following explanatory example of this exception: "Thus, for example, if an employer maintains a short-term disability insurance plan providing salary replacement for 12 weeks starting on the fourth day of absence, *the employer may make deductions from pay for the three days of absence before the employee qualifies for benefits under the plan . . . .*" (Italics added.)

as bona fide. In addition, to be bona fide, the plan must be administered impartially, and its design should not reflect an effort to evade the requirement that exempt employees be paid on a salary basis." (U.S. Dept. of Labor, Wage & Hour Div., Opn. Letter (Jan. 7, 2005) [2005 WL 330606].) The parties have not cited and we have not found any state or federal case law further construing the concept of a bona fide disability plan.

■ As plaintiffs correctly point out, to be exempt from overtime pay requirements, ADVO's employees must qualify for exemption under both federal and state law. (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 795 [85 Cal.Rptr.2d 844, 978 P.2d 2].) We have therefore also taken into account matters contained in the Enforcement Policies and Interpretations Manual published by the California Division of Labor Standards Enforcement (DLSE) (hereafter DLSE Manual). The DLSE is the state agency charged with administering and enforcing the state's labor statutes and wage order regulations. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561–562 [59 Cal.Rptr.2d 186, 927 P.2d 296].) To a substantial degree, the DLSE has followed the federal salary basis test. In a March 1, 2002 opinion letter, the DLSE stated that "[t]he deductions from salaries allowed under 29 C.F.R. §§ 541.118(a)–(c) of the federal regulations also are permitted under state law . . . ." However, the DLSE Manual includes interpretations of the "bona fide plan" requirement that are arguably more limiting than the federal regulation. (See DLSE Manual, §§ 51.6.16–51.6.16.1, 51.6.17.)[12] Although it is well established that the courts need not defer to DLSE's interpretations, we may give them whatever persuasive weight they carry. (See *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581–582 [94 Cal.Rptr.2d 3, 995 P.2d 139].)

■ In our view, ADVO's disability plan was a bona fide plan under both the federal salary basis test and state law. The plan was communicated to employees, operated as described, was administered impartially, and was not designed to evade the overtime pay requirement.

ADVO's plan offered defined short-term disability benefits—13 weeks of full salary replacement and another 13 weeks of partial salary replacement benefits. Those basic benefits were communicated to ADVO's employees in written materials, in oral presentations made to new hires, and on the company intranet.

---

[12] Section 51.6.16 of the DLSE Manual states that "only sickness or disability plans which continue the full amount of the salary of the sick or injured employee . . . will be recognized . . ." as bona fide plans. Section 51.6.16.1, which immediately follows it, states: "*Caveat*: State required disability insurance benefits do not constitute a 'bona fide' sick leave plan." (Boldface omitted.) Section 51.6.17 quotes a dictionary definition of "bona fide" as "[m]ade or carried out in good faith . . . [a]uthentic, genuine" and states that "DLSE will judge each sickness and disability plan on a case-by-case basis."

Plaintiffs do not dispute that the plan was communicated to employees. They argue primarily that the plan was not bona fide because it did not operate as described. According to plaintiffs, California employees were informed that the plan provided "company paid" salary "continuation" benefits when, in fact, the source of the benefits for California employees was a combination of SDI and company-paid benefits, and the benefit payments did not continue an employee's salary without interruption, but were subject to paperwork delays that employees did not expect or plan for. We are not persuaded that these facts are sufficient to disqualify ADVO's plan for purposes of the salary basis test.

First, the term "bona fide" is in essence a requirement of good faith, and DOL's interpretation of the term must be viewed in that light. The requirement that the plan operate as described is not a full disclosure requirement. It is not designed to assist employees in making informed choices, or to protect them from surprise or unfair terms. As we see it, the purpose of the "bona fide" requirement in this context is to ensure that the employer does not communicate one plan on paper to its employees that meets the salary basis test while operating an entirely different one in practice that does not in fact provide "compensation for loss of salary occasioned by both sickness and disability." (29 C.F.R. § 541.118(a)(3).) The facts plaintiffs rely on here do not come close to showing that kind of duplicity. In essence, the differences between ADVO's stated plan and its practice in this case were differences between how the plan operated nationwide and how it operated in California. These differences stemmed from the fact that California, unlike most states, operates a mandatory state-sponsored, employee-funded disability insurance program. The fact that ADVO did not explain to its California hires how its plan would operate here may have been a poor human resources practice, but it is not evidence of any bad faith attempt by ADVO to deprive its California employees of salary-loss benefits.

Second, the plan description given to ADVO employees was simply a general overview of the short-term disability benefit they would receive. It was plainly not intended to explain every detail of the program. It did not define the term "disability" or purport to explain how employees would go about applying for disability benefits, how eligibility would be verified, or how or when benefit payments would be made. As a general overview, the information provided was not inaccurate. It did not promise immediate approval of eligibility or the payment of benefits on any specific schedule. The fact that ADVO did not use these employee benefits overviews to flesh out the full details of the plan as it would apply to California employees raises no triable issues of fact under the federal test.

ADVO further maintains that the plan was not administered impartially. Its evidence on this point consisted of (1) a memo from an ADVO employee

indicating that a few employees taking maternity leave had been allowed to use vacation pay to bridge the seven-day waiting period before their disability benefits began; and (2) the deposition testimony of an ADVO human resources department assistant that this use of vacation leave should not have been allowed. The only issue raised by this evidence is whether ADVO sometimes paid vacation benefits in a manner that was inconsistent with its disability policy. It does not prove that the disability plan was administered in a manner that deliberately favored some employees over others. In fact, ADVO contracted with a third party to review all disability claims, which helped to ensure that the disability program would be administered impartially. There is certainly no evidence that ADVO disproportionately denied disability leave or provided inferior benefits for any subgroup of salaried employees.

Finally, plaintiffs offered no evidence or argument that ADVO's disability plan was fashioned or constructed in any manner to deliberately evade the requirement that exempt employees be paid on a salary basis. From all appearances, the program was created to provide an employee benefit that would assist the company in recruiting qualified employees. The salary basis test is not intended as an overtime trap for employers who offer such a benefit for a legitimate business reason, just because its design or implementation leaves something to be desired.

Applying the federal salary basis test, and utilizing the DOL's January 7, 2005 opinion letter construing the term "bona fide," we find no triable issue of material fact as to whether ADVO's plan was bona fide.

Plaintiffs also argue that the plan was not bona fide for purposes of state law, in reliance on the earlier cited portions of the DLSE Manual discussing the DLSE's interpretation of the term. According to plaintiffs, ADVO's plan was not bona fide under state law because it relied on state disability insurance benefits. As noted above, we need not accord any deference to the DLSE's position that "[s]tate required disability insurance benefits do not constitute a 'bona fide' sick leave plan." (DLSE Manual, § 51.6.16.1.) However, in our view, ADVO's plan does not fall outside DLSE's parameters. As we read section 51.6.16.1, it simply holds that an employer's *exclusive* reliance on the SDI program to pay disability benefits would not constitute a bona fide plan. ADVO's plan does not rely exclusively on state required disability insurance benefits but supplements those benefits with employer payments that, together with SDI, replace the full amount of the sick or injured employee's salary. This satisfies the requirements of both section 51.6.16 and section 51.6.16.1 of the DLSE Manual. Thus, assuming without deciding that the DLSE Manual correctly sets forth state law on the

meaning of the term "bona fide," we find nothing in it to suggest that ADVO's short-term disability plan is not bona fide under state as well as federal law.

Plaintiffs make the further claim that ADVO, by paying its own contribution after the state calculated the employee's SDI benefit, "broke the law" and effectively defrauded the SDI trust fund. We note that Unemployment Insurance Code section 2656 appears to contemplate that an employee can receive SDI benefits along with wage loss replacement benefits from the employer as long as the two together do not exceed the employee's weekly wage immediately before the commencement of his or her disability. (Cf. *Cooper v. Unemployment Ins. Appeals Bd.* (1981) 118 Cal.App.3d 166 [173 Cal.Rptr. 255] [employee who collects full salary replacement benefits under employer-sponsored disability plan not eligible for SDI benefit].) In fact, disability insurance policies providing for coordination of benefits with or offsets for payments received under governmental wage loss insurance programs are not, in general, unlawful. (See, e.g., Ins. Code, § 10369.7; *Russell v. Bankers Life Co.* (1975) 46 Cal.App.3d 405 [120 Cal.Rptr. 627].) However, whether ADVO's disability benefits program was administered in full technical compliance with all applicable provisions of the Unemployment Insurance Code is an entirely separate issue from whether it is a bona fide plan for purposes of the salary basis test.

D. *State Disability Insurance Law*

Because we hold that ADVO's plan was bona fide, we need not reach the issue of whether it operated under state disability insurance law (issue 5). The parties have not cited and our own research has failed to disclose any cases or opinion letters construing that portion of part 541.118(a)(3). The text of the subdivision and of the parallel provision of the new regulation, 29 Code of Federal Regulations part 541.602(b)(2) (2006),[13] suggest that operating in compliance with a state disability insurance law is not a separate and

---

[13] Title 29 Code of Federal Regulations part 541.602(b)(2) (2006) reads in full as follows: "Deductions from pay may be made for absences of one or more full days occasioned by sickness or disability (including work-related accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability. The employer is not required to pay any portion of the employee's salary for full-day absences for which the employee receives compensation under the plan, policy or practice. Deductions for such full-day absences also may be made before the employee has qualified under the plan, policy or practice, and after the employee has exhausted the leave allowance thereunder. Thus, for example, if an employer maintains a short-term disability insurance plan providing salary replacement for 12 weeks starting on the fourth day of absence, the employer may make deductions from pay for the three days of absence before the employee qualifies for benefits under the plan; for the twelve weeks in which the employee receives salary replacement benefits under the plan; and for absences after the employee has exhausted the 12 weeks of salary replacement benefits. Similarly, an

independent basis for making salary deductions under the salary basis test, but is used as an example of one way that employers can satisfy the bona fide plan requirement, namely, by adopting a disability benefits plan that is expressly authorized or mandated by state insurance law. Thus, the reference to disability insurance laws in part 541.118(a)(3) may reasonably be construed as a safe harbor provision for employers who would otherwise be placed in an untenable situation if following state law exposed them to potential liability for paying overtime to their salaried employees. That provision is not applicable here because California operates a state-sponsored disability insurance program that neither specifically mandates nor specifically authorizes the type of add-on disability benefits plan that ADVO maintains.[14]

### E. *Objective Intent to Pay Salary*

Finally, plaintiffs argue that under the case law an employer claiming exemption from the obligation to pay overtime under the salary basis regulations must also demonstrate an "objective intent" to pay salary (issue 6). According to plaintiffs, ADVO had no such objective intent as shown, among other things, by evidence that it did not take steps to train its responsible personnel employees to ensure that no improper salary deductions were made. In our view, the federal cases plaintiffs rely on for this test are inapplicable when the evidence fails to establish that any improper salary deduction has been taken. The cases apply only when an employer has made improper deductions and asserts that they were inadvertent or not part of a pattern or practice of making improper deductions, and should therefore not affect the exempt status of its employees. (See *Klem v. County of Santa Clara, California, supra*, 208 F.3d at pp. 1090–1091; *Yourman v. Giuliani* (2d Cir. 2000) 229 F.3d 124, 130–131; *Takacs v. Hahn Automotive Corp.* (6th Cir. 2001) 246 F.3d 776, 782–783; *Whetsel v. Network Property Services, LLC* (7th Cir. 2001) 246 F.3d 897, 900–901.) Because we find no evidence that ADVO took salary deductions that were not allowed by part 541.118(a)(3), plaintiffs' asserted intent evidence was not material.

### F. *Conclusion*

In sum, the evidence shows, at most, a triable issue of material fact with respect to whether ADVO took salary deductions for full-day absences when

---

employer may make deductions from pay for absences of one or more full days if salary replacement benefits are provided under a State disability insurance law or under a State workers' compensation law."

[14] The state authorizes employers to set up voluntary disability plans that substitute for SDI and must be approved by the Employment Development Department. (See Unemp. Ins. Code, § 3251 et seq.) Such a plan would have come within the "safe harbor" provision of part 541.118(a)(3) as we have construed it.

employees went out on disability leave after working a partial week. However, we find no triable issue of material fact, under either federal or state law, with respect to whether such deductions were taken in accordance with a bona fide plan, policy, or practice of providing compensation for loss of salary caused by disability. Accordingly, the trial court properly granted summary judgment to ADVO.

## III. DISPOSITION

The judgment is affirmed.

Stein, Acting P. J., and Swager, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 12, 2007, S158006.