[No. B195860. Second Dist., Div. Eight. Mar. 18, 2008.]

RON ISNER et al., Plaintiffs and Appellants, v.
FALKENBERG/GILLIAM & ASSOCIATES, INC., Defendant and
Respondent.

## COUNSEL

Thierman Law Firm, Mark R. Thierman; Law Offices of Scott A. Miller, Scott A. Miller; and Steven L. Miller for Plaintiffs and Appellants.

Hanson Bridgett Marcus Vlahos & Rudy, Sandra L. Rappaport and Molly A. Lee for Defendant and Respondent.

## Opinion

**RUBIN, J.**—Plaintiffs and appellants Ron and Sharon Isner (collectively, the Isners) appeal from the summary judgment entered against them and in favor of defendant and respondent Falkenberg/Gilliam & Associates, Inc. (Falkenberg), on the Isners' action for unpaid wages.[1] Finding no triable issues of fact and that the trial court's legal analysis was correct, we affirm.

## FACTS

We recount the evidence in accordance with the usual rules of review from an order granting summary judgment.[2] Falkenberg is a property management company specializing in managing nonprofit housing for the elderly. From September 1998 through February 2004, the Isners, who are husband and wife, were continuously employed at one or another of three properties managed by Falkenberg in capacities that required the Isners to live on the premises. Under applicable labor laws the Isners were thus "resident employees." (See *Brewer v. Patel* (1993) 20 Cal.App.4th 1017, 1022 [25 Cal.Rptr.2d 65] (*Brewer*).)

Prior to beginning their employment at each property, the Isners signed a resident employee employment agreement (resident employment agreement).[3] Each agreement contained the following provision: "Employee shall be on call and shall respond to the facility's emergency alarm systems on designated evenings from 5:00 p.m. until 8:00 a.m. and on designated weekends from 5:00 p.m. Friday evening until 8:00 a.m. Monday morning. *While on call, Employee shall remain on the facility premises within hearing distance of the emergency alarm systems and telephone but is otherwise free to use on-call time as he or she chooses.* At Employee's discretion, he or she may request that [another resident employee] (whichever is on call at the time) respond to emergency calls with the Employee, or in the place of the

---

[1] The complaint alleged causes of action for untimely payment of wages (Lab. Code, § 204); liquidated damages (Lab. Code, § 1194.2); overtime compensation (Lab. Code, § 1194); waiting penalties (Lab. Code, § 203 et seq.); private attorney general (Lab. Code, § 2699); and unfair competition (Bus. & Prof. Code, § 17200 et seq.).

[2] We independently examine the record to determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) The affidavits of the moving party are strictly construed and those of the opposing party are liberally construed. (Code Civ. Proc., § 437c, subd. (*o*)(2).) We view the evidence and all inferences reasonably drawn from it in the light most favorable to the party opposing the motion. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*); *Saelzler*, at p. 768.)

[3] In 1986, Falkenberg sought and obtained the Labor Commissioner's approval of its resident employment agreements which, in all material respects, were identical to the employment agreements signed by the Isners.

Employee. [¶] *All time spent in responding to emergencies shall be counted as hours worked, but no other on-call hours shall be counted as hours worked, except that, if Employee is unable to have five hours of uninterrupted sleep as a result of responding to an emergency, the Employer will credit Employee with eight hours' time worked* under the terms of Section V(C.) below. . . ." (Italics added.)

Consistent with this provision of the resident employment agreements he signed, Ron Isner recalled being told upon first being hired that he had to be within hearing distance of the telephone and alarm whenever he was on duty or on call. The Isners were always on duty and on call together and alternated their on-call time with the other resident employees. Although in each building in which they worked they were given an apartment to live in seven days a week, the Isners only stayed at that apartment when they were on duty or on call. With some exceptions, the Isners both stayed within audible range of the telephone and alarm when they were on duty or on call.[4]

Each building in which the Isners worked had a similar alarm system that consisted of a buzzer that sounded in the resident employees' apartments whenever a smoke alarm was triggered or a tenant pushed an emergency call button. The buzzer was audible almost everywhere in the resident employees' apartments except the kitchen and bathroom when the door was closed and the water running. Typically, when an alarm sounded while the Isners were on call, Sharon would go to the office to determine the origin of the alarm; she would radio this information to Ron, who would be waiting at the elevator to go to the affected apartment to assess the situation; while Ron did so, Sharon would wait in the office to find out whether some additional action needed to be taken, such as calling the paramedics. If it turned out to be a false alarm, the Isners would return to their apartment.

While the Isners were on duty and on call, they slept, ate, talked on their personal telephone, used the Internet, played computer games, read magazines or watched television in their apartment when they were not responding to an emergency. They could not, however, go to the pool or walk around the apartment complex, presumably because they would then be out of audible range of the telephone and alarm. Needless to say, during their on-call time, the Isners could not leave the premises to go to a movie or go shopping

---

[4] Sharon Isner recalled one or the other was occasionally out of hearing range of the telephone and alarm for short periods during their on-call time; for example, to pick up things that could not be delivered, like groceries or something at The Home Depot. There were also occasions when one of the Isners would be in the shower or in the kitchen doing dishes and unable to hear the alarm. But whenever one of the Isners was unable to hear the telephone and alarm, the other Isner was always within range.

together.[5] And although all of the resident employees had radios with which to communicate with one another within a limited radius (i.e., while on the building grounds), they did not have pagers.

The Isners understood that they had to fill out timesheets to get paid and that it was their responsibility to note on those timesheets both their usual eight-hour workday and times spent responding to emergencies. They usually recorded only the calls that took 15 minutes or more; they knew that they could record calls of lesser duration, but they chose not to do so. Over the course of their employment at the properties managed by Falkenberg, there was never an occasion when the Isners were not paid for time they recorded on their timesheets.

Ron Isner retired and Sharon Isner resigned as resident employee in February 2004.

## PROCEDURAL BACKGROUND

The resident employment agreements contained an arbitration clause and in December 2004, the Isners filed an arbitration demand against Falkenberg for "unpaid wages for hours worked." The parties agreed on an arbitrator, but when the Isners moved to amend their arbitration demand to proceed as a class action, the arbitrator declined to rule on the motion because he did not want to arbitrate a class action. After the parties could not agree on how to proceed—bifurcate the motion for decision by another arbitrator or select a new arbitrator who would decide the motion and the case without regard to whether it was a class action—the Isners withdrew from the arbitration.[6]

On June 5, 2006, the Isners filed this class action lawsuit against Falkenberg on behalf of all employees required to live onsite, assistant managers and

---

[5] In their opposition to the summary judgment motion, the Isners assert that when Sharon Isner had surgery in 1999, Ron Isner could not visit her in the hospital for three to four days because he was unable to leave the apartment complex. Although there is a citation to specified paragraphs of the Isners' supporting declarations, those declarations do not refer to this incident.

[6] One of the grounds of Falkenberg's summary judgment motion was that the Isners were obligated to arbitrate the dispute based on the arbitration clause in their employment agreements and on a so-called "Binding Arbitration Agreement/Waiver of Rights under Labor Code Section 229" the Isners signed. But the trial court found against Falkenberg on this theory, reasoning that Labor Code section 229 gave the Isners the right to litigate their claim for unpaid wages without regard to any arbitration agreement. Citing *Gentry v. Superior Court* (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556], Falkenberg argues on appeal that summary judgment should have been granted under this theory because the Isners made a postdispute agreement to arbitrate. Since we find summary judgment properly granted under Falkenberg's alternate theory, we need not reach this issue.

managers who were required to "stay within ear-shot of their apartments or the main office during their off hours in order to hear a buzzer to respond to tenant and other requests." The gravamen of the complaint was that these resident employees were entitled to payment not just for the hours they spent responding to emergencies while on call, but for all the hours they were on call and thus confined to their apartment or the building office so as to remain within audible range of the telephone and alarm.

On September 26, 2006, Falkenberg moved for summary judgment or, in the alternative, summary adjudication. The gist of the motion was that, under *Brewer, supra*, 20 Cal.App.4th 1017, Falkenberg was required to pay the Isners only for the hours they were actually performing duties during their on-call time, and it was undisputed that Falkenberg had done so. The trial court agreed, finding the Isners entitled to compensation for all hours of work actually performed, but not all hours they were required to be on the premises.

The Isners filed a timely notice of appeal.

## DISCUSSION

### A. *Standard of Review*

Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar, supra*, 25 Cal.4th at p. 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (25 Cal.4th at p. 850, fn omitted.)

Where all of the evidence presented by the plaintiff shows the existence of an element of the offense only as likely as or even less likely than the nonexistence of that element, the court must grant the defendant's motion for summary judgment because a reasonable trier of fact could not find for the plaintiff in such a case. (*Aguilar, supra*, 25 Cal.4th at p. 857.) Even where the element at issue can be proved by inferences, the inference of the existence of the element must be more likely than the inference of its nonexistence. An inference is reasonable if, and only if, it implies the existence of an element more likely than the nonexistence of that element. (*Ibid.*)

B. *Summary Judgment Was Proper*

The Isners contend there were material issues of triable fact that should have precluded summary judgment. They argue that whether they were free to use their on-call time as they chose, inasmuch as they were required to remain in hearing distance of the alarms, was such an issue. At the onset, we disagree that there are any disputed factual issues. Although often couched in terms of triable issues of fact, the motion presents purely legal issues. The facts surrounding the Isners' employment responsibilities are not contested.

█ The Industrial Welfare Commission (the commission) promulgates "administrative regulations known as 'wage orders' to regulate wages, work hours, and working conditions" in various industries. (*Singh v. Superior Court* (2006) 140 Cal.App.4th 387, 393 [44 Cal.Rptr.3d 348] (*Singh*).) The commission has promulgated wage order No. 5, governing the public housekeeping industry, including homes for the aged. (Cal. Code Regs., tit. 8, § 11050, subd. 2(P)(4).)[7] The parties agree that their dispute is governed by wage order No. 5, which defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so, and *in the case of an employee who is required to reside on the employment premises, that time spent carrying out assigned duties shall be counted as hours worked. . . .*" (§ 11050, subd. (2)(K), italics added.) They disagree, however, on the application of the italicized language.

California's Division of Labor Standards Enforcement (DLSE) is the state agency charged with administering and enforcing the state's labor statutes and wage order regulations. (*Sumuel v. ADVO, Inc.* (2007) 155 Cal.App.4th 1099, 1109 [66 Cal.Rptr.3d 622]; *Singh, supra,* 140 Cal.App.4th at p. 393.) Although not controlling, the DLSE's interpretation of section 11050, subdivision (2)(K) set forth in the DLSE Enforcement Policies and Interpretations Manual (DLSE Manual) is instructive. (See *Sumuel,* at p. 1109.) According to section 47.3.2.1 of the DLSE Manual, the definition of hours worked "as applied, for instance, to a motel clerk who was required to reside on the motel grounds and to remain there 24 hours a day unless relieved, the California courts have held that only the time spent performing physical, mental or other specified tasks was counted as hours worked." In support of this interpretation of section 11050, subdivision (2)(K), the DLSE Manual cites *Brewer, supra,* 20 Cal.App.4th 1017.

In *Brewer, supra,* 20 Cal.App.4th 1017, the issue was whether the plaintiff, a motel clerk who was required to live on the premises, was entitled to

---

[7] All undesignated section references are to California Code of Regulations, title 8.

compensation for the entire time he spent at the motel (less allowances for sleep time and mealtime), or only for the time he provided services. The evidence at trial established that the plaintiff's duties (answering the telephone; checking guests in and out of their rooms; helping clean the grounds and the rooms; and doing laundry) took him less than five hours a day to perform; but in addition to these duties he was required to keep the office open from 6:00 a.m. to 10:00 p.m. every day and was expected to remain on the premises 24 hours a day unless he made arrangements with the motel owner for a replacement. In addition to a salary, the plaintiff was given a one-bedroom apartment connected to the motel office to live in free of charge. When he was not actually working, the plaintiff was free to relax in the apartment, watch television, et cetera. (*Id.* at p. 1019.)

The appellate court affirmed the trial court's finding that the plaintiff was entitled to be paid only for the time he actually worked, not for all the time he spent at the motel. (*Brewer, supra,* 20 Cal.App.4th at p. 1020.) The court in *Brewer* found section 11050, subdivision (2)(K) mandated a special rule for "apartment managers and motel clerks who are obligated to reside on the work premises. In that situation, only 'that time spent carrying out assigned duties shall be counted as hours worked.' This language is obviously meant to address the special circumstances of those who are required to reside where they work. An employee such as this is not always working. At times he may be away from the work site shopping, or visiting with friends. At other times, the employee may be on the work premises but attending to personal matters such as cooking, cleaning, or watching television. The language quoted above accepts this reality and states that an employee in this situation must be compensated only for 'that time spent carrying out assigned duties,' in other words, only for the work the employee actually provides." (20 Cal.App.4th at p. 1021.) In other words, under *Brewer,* employees who are required to reside where they work are entitled to be compensated for time spent performing their assigned duties; they not are not entitled to be compensated for time spent simply being available to perform those duties.

Here, the evidence was undisputed that, like the motel clerk in *Brewer,* the Isners were free to sleep, eat, talk on the telephone, use the Internet, play computer games, read for leisure and watch television while they were not responding to an emergency, so long as they remained available to respond (i.e., within audible range of the telephone and alarm). Under the reasoning of the court in *Brewer,* the Isners were entitled to compensation for the time they spent carrying out assigned duties, i.e., responding to emergency calls; they were not entitled to compensation for the time they were able to attend to personal matters while remaining available to respond to emergency calls.

In an attempt to distinguish *Brewer,* the Isners argue that (1) because they were required to remain in their apartment or the building office in order to

hear the telephone and alarms, they were more like a security guard or a receptionist who has to remain at a duty station than they were like the motel clerk "who could at least enjoy the amenities of the motel"; and (2) the *Brewer* motel clerk could leave the premises if he informed the owner so that the owner could find a replacement whereas the Isners could not. We are unpersuaded. First, the only reasonable inference from the fact that the motel clerk was "required to keep the motel office open from 6 a.m. to 10 p.m. every day" and "generally expected to remain on the motel premises 24 hours a day" (*Brewer, supra,* 20 Cal.App.4th at p. 1019) is that he had to be within sight or sound of the office during all of those hours so as to be available to respond to the needs of motel guests; this is analogous to the requirement that the Isners be within audible range of the telephone and alarm during the hours they were on call so as to be available to respond to the needs of the tenants. Second, Ron Isner testified that, although Falkenberg scheduled the resident employees' on-call time—alternating between the resident employees and the resident assistants—with advance notice, the times could be switched. Accordingly, like the motel clerk in *Brewer,* the Isners could leave the premises if arrangements were made for their replacements.

The Isners' reliance on a December 28, 1998 DLSE opinion letter regarding "Compensability of Resident Apartment Managers' 'On-Call Time' " is also misplaced. In that letter, the DLSE distinguishes between apartment managers who are *required* by the employer to reside on the premises and those who choose to live on the premises but are not required to do so: "This is a critically important question, as Industrial Welfare Commission ('IWC') Wage Order 5, which governs employers that own or manage apartment buildings, provides a special definition of 'hours worked' for 'employees required to reside on the employment premises.' " (DLSE Opn. Letter 1998.12.28, p. 1.) As noted by the DLSE, *Brewer* governs the special definition of hours worked in relation to apartment managers who are *required* to reside on the premises and "[u]nder Brewer, apartment managers who are required to reside on the employment premises need not be compensated for time during which they are free to engage in personal activities, regardless of any geographic restrictions imposed by the employer on such activities." (DLSE Opn. Letter, *supra,* at p. 3.) Here, there is no dispute that the Isners were required to reside on the premises. Accordingly, their compensation for on-call time is governed by *Brewer,* the application of which to this case we have already discussed.

Under these circumstances, summary judgment was proper.

## DISPOSITION

The judgment is affirmed. Falkenberg shall recover its costs on appeal.

Cooper, P. J., and Flier, J., concurred.