[No. G040338. Fourth Dist., Div. Three. Apr. 3, 2009.]

JOSE GOMEZ et al., Plaintiffs and Appellants, v.
LINCARE, INC., Defendant and Respondent.

510

COUNSEL

David R. Greifinger; Howard A. Goldstein; Arias Ozzello & Gignac, Mark A. Ozzello, Mike Arias and Stephanie Lai for Plaintiffs and Appellants.

Drinker Biddle & Reath, Alan J. Lazarus, Cheryl D. Orr and Susan B. Burr for Defendant and Respondent.

## Opinion

FYBEL, J.—

### Introduction

Defendant Lincare, Inc. (Lincare), provides respiratory services and medical equipment setup to patients in their homes. Plaintiffs Jose Gomez, Daniel Gutierrez, and Donny Talbot (collectively, plaintiffs) were service representatives for Lincare. Their job duties included driving vans containing liquid oxygen and compressed oxygen, which are defined by the federal government as hazardous materials. In addition to their regular, eight-hour workdays, plaintiffs regularly worked on call in the evenings and on weekends.

Plaintiffs sued Lincare to recover unpaid compensation. Specifically, plaintiffs sought compensation for the on-call time spent resolving customer questions by phone, and for all the time they were on call, even when not responding to customer calls. Plaintiffs also claimed they were entitled to a premium rate of compensation, rather than their regular rate of compensation, for all hours worked in excess of eight hours per day or 40 hours per week. Lincare filed motions for summary judgment and/or summary adjudication and demurrers. The trial court's rulings on those motions ultimately resolved every cause of action against plaintiffs. Judgment was entered, and plaintiffs appealed. For the reasons explained in detail, *post,* we affirm in part, reverse in part, and remand.

The trial court granted Lincare's motions for summary adjudication of plaintiffs' claim for overtime compensation on the ground that plaintiffs, as drivers of hazardous materials, were covered by the motor carrier exemption and therefore exempt from California's overtime law. Lincare failed to carry its initial burden of proof to show the motor carrier exemption applied to all of plaintiffs' workdays, and summary adjudication was improperly granted.

The trial court also sustained Lincare's demurrer to plaintiffs' claim for breach of an express contract. As we shall explain, the complaint contained sufficient facts to state a cause of action for breach of an express contract, and the order sustaining the demurrer is reversed.

The trial court then granted summary judgment. We deem the order granting summary judgment to be an order granting summary adjudication of all remaining causes of action in plaintiffs' complaint. The trial court determined Lincare had established there were no triable issues of material fact regarding plaintiffs' claim for on-call time following a regular shift of fewer than eight hours. We affirm the order granting summary adjudication of

the first cause of action in the fourth amended complaint because undisputed evidence showed plaintiffs were paid for all time they worked during regular shifts and were never on call after working less than an eight-hour shift.

With respect to plaintiffs' claims for failure to provide itemized wage statements, failure to pay wages upon termination of employment, and unfair competition, the trial court found—and the parties agree—those claims were derivative of a valid claim for wages. Because the court had summarily adjudicated all the wage claims against plaintiffs, it summarily adjudicated those claims, listed *ante*, against them as well. As noted, we conclude the trial court erred by granting summary adjudication of the overtime claim based on the motor carrier exemption; therefore, we also reverse the summary adjudication of those causes of action.

Finally, the trial court summarily adjudicated plaintiffs' claims for breach of an implied-in-fact contract and promissory estoppel. Although the trial court correctly determined there was no triable issue of material fact regarding the implied-in-fact contract claim, Lincare failed to meet its initial burden with respect to the promissory estoppel claim by failing to address the allegation that Lincare promised to pay plaintiffs for the time spent telephonically resolving customer questions. While we affirm the order granting summary adjudication of the sixth cause of action, we reverse the order with respect to the seventh cause of action because plaintiffs raised a triable issue of fact whether time spent resolving customer issues telephonically when no visit was necessary was de minimis.

STATEMENT OF FACTS

Lincare provides respiratory services, including oxygen systems, respiratory care, infusion therapy, and medical equipment setup to patients in their homes. Plaintiffs were service representatives for Lincare; plaintiffs' job responsibilities included transporting liquid and compressed oxygen, oxygen concentrators, and liquid oxygen systems, and setting up related medical equipment for Lincare's patient clients.

Plaintiffs worked eight-hour shifts Monday through Friday. When plaintiffs worked more than eight hours in one day as part of their regular hours, they were paid overtime rates.

Plaintiffs were also required to carry a pager or cell phone after their regular work hours and respond to patient phone calls at night or on the weekend. Lincare's on-call policy required plaintiffs to respond telephonically to pages within 30 minutes, and to be available to respond to patient calls, in person, within two hours. Plaintiffs were prohibited from consuming

alcohol while on call, but were otherwise free to engage in any activities desired. When plaintiffs made service visits after hours, they were compensated by Lincare at the regular rate of pay. If plaintiffs were able to resolve the customer's problem by telephone without making a service visit, they were instructed not to record that time, and they were not compensated for it.

Lincare's written on-call policy reads, in relevant part, as follows: "All non-exempt service reps will receive normal pay for on-call hours worked. On-call hours worked is defined as the time spent by a service representative on a service call or with an emergency phone call after the normal work day. On-call work is divided equally, where practical, among all service representatives in each area, and is a condition of employment. [¶] If the total hours worked exceeds the regularly scheduled 40-hour work week (or in the State of California exceeds the 8 hour work day, as required by law), a driver will be paid at his overtime rate of pay for each additional hour worked." Notwithstanding this policy, plaintiffs alleged and declared they were not paid for their time on emergency phone calls after normal working hours.

PROCEDURAL HISTORY

Plaintiffs' second amended complaint alleged causes of action for (1) failure to pay wages, in violation of Industrial Welfare Commission (IWC) wage order No. 2-2001 and California Code of Regulations, title 8, section 11020;[1] (2) failure to pay overtime compensation, in violation of Labor Code sections 510, 1194, and 1198; (3) failure to provide itemized statements, in

---

[1] The IWC has promulgated 13 orders regulating the wages, hours, and working conditions of specific industries, three related to specific occupations, and one addressing " 'miscellaneous employees.' " (*Ralphs Grocery Co. v. Superior Court* (2003) 112 Cal.App.4th 1090, 1097–1098 [5 Cal.Rptr.3d 687].) The main purpose of the business, not the job duties of the employee, determines which wage order applies in any given case. (*Wamboldt v. Safety-Kleen Sys.* (N.D.Cal., Aug. 21, 2007, No. C 07-0884 PJH) 2007 U.S.Dist. Lexis 65683, p. *17.)

Plaintiffs allege wage order No. 2-2001 governs this case. Wage order No. 2-2001, which is codified at California Code of Regulations, title 8, section 11020, covers the personal services industry. (Cal. Code Regs., tit. 8, § 11020, subd. 1.) Plaintiffs also contend they are covered by wage order No. 9-2001 (Cal. Code Regs., tit. 8, § 11090), which governs the transportation industry. Lincare argues its industry is regulated by wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040), which applies to professional, technical, clerical, mechanical, and similar occupations.

We need not determine which wage order applies in this case because the exemption for motor carriers, which is the focus of much of this opinion, appears in each of the potentially applicable wage orders. (*Collins v. Overnite Transportation Co.* (2003) 105 Cal.App.4th 171, 175 & fn. 1 [129 Cal.Rptr.2d 254].) To avoid confusion, we will refer in this opinion to wage order No. 2-2001, California Code of Regulations, title 8, section 11020, because that is the wage order alleged to have been violated.

violation of Labor Code section 226; (4) failure to pay wages upon termination of employment; and (5) unfair competition, in violation of Business and Professions Code section 17200 et seq.

Lincare moved for summary judgment and/or summary adjudication against plaintiffs. Following briefing and oral argument, the trial court denied the motions for summary judgment, and granted the motions for summary adjudication only as to the second cause of action for failure to pay overtime compensation. The court concluded plaintiffs were exempt from California's overtime provisions as drivers of hazardous materials.

Plaintiffs' fourth amended complaint alleged causes of action for (1) failure to pay wages in violation of IWC wage order No. 2-2001 and California Code of Regulations, title 8, section 11020; (2) failure to provide itemized statements, in violation of Labor Code section 226; (3) failure to pay wages upon termination of employment, in violation of Labor Code section 203; (4) unfair competition, in violation of Business and Professions Code section 17200 et seq.; (5) breach of express contract; (6) breach of implied-in-fact contract; and (7) promissory estoppel. Lincare demurred to the fifth, sixth, and seventh causes of action in the fourth amended complaint. The court overruled the demurrer as to the sixth and seventh causes of action, but sustained it without leave to amend as to the fifth cause of action for breach of express contract, on the ground the employee handbook, which, plaintiffs alleged, memorialized the terms of the express contract, unequivocally stated it was not an employment contract.

Lincare then filed a second set of motions for summary judgment and/or summary adjudication. The court granted the motions for summary judgment. The court concluded Lincare had proven there were no triable issues of material fact regarding the wage claim in the first cause of action. The court found the causes of action for breach of an implied-in-fact contract and promissory estoppel failed because the undisputed evidence showed there was no promise to pay plaintiffs any more than they had actually been paid. The court also found the claims for violation of Labor Code sections 226 and 203 and for unfair competition were derivative of a valid claim for wages. Because the wage claims had been decided against plaintiffs, the court determined those claims, too, must fail. Judgment was entered, and plaintiffs timely appealed.

## DISCUSSION

## I.

### STANDARDS OF REVIEW

We review orders granting summary judgment or summary adjudication de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143]; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35 [123 Cal.Rptr.2d 555].) A motion for summary judgment or summary adjudication is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

We review de novo an order sustaining a demurrer without leave to amend. (*Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1264 [39 Cal.Rptr.3d 634].) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

## II.

### SUMMARY ADJUDICATION OF STATUTORY OVERTIME CLAIM

The second cause of action in the second amended complaint alleged Lincare had failed to pay plaintiffs overtime pay, as required by Labor Code section 510, subdivision (a), which provides, in relevant part: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." In its motions for summary adjudication

of this cause of action, Lincare argued that, because plaintiffs transported hazardous materials as part of their jobs, they were exempt from California's statutory overtime rules.[2]

■ At trial, Lincare would bear the burden of proving the affirmative defense of plaintiffs' exemption from overtime (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 338 [17 Cal.Rptr.3d 906, 96 P.3d 194]; *Wamboldt v. Safety-Kleen Sys., supra*, 2007 U.S.Dist. Lexis 65683 at p. *9), and therefore it bore the burden of proof to establish the affirmative defense on its motions for summary adjudication. "[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial. Again, in *Reader's Digest [Assn. v. Superior Court* (1984) 37 Cal.3d 244 [208 Cal.Rptr. 137, 690 P.2d 610]], we held to the effect that the placement and quantum of the burden of proof at trial were crucial for purposes of summary judgment. [Citation.] . . . Thus, if a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment *as a matter of law*, but would have to present his evidence to a trier of fact. By contrast, if a defendant moves for summary judgment against such a plaintiff, he must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not—otherwise, *he* would not be entitled to judgment *as a matter of law*, but would have to present *his* evidence to a trier of fact." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 851, fn. omitted.) "Exemptions [to the overtime compensation laws] are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms." (*Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 562 [38 Cal.Rptr.2d 221].)

■ California Code of Regulations, title 8, section 11020, subdivision 3(J)(2) exempts from the rules regarding overtime compensation those employees whose hours of service are regulated by California Code of Regulations, title 13.[3] Title 13, section 1212.5, subdivision (b) limits the

---

[2] Lincare offered undisputed evidence that plaintiffs' duties included transporting hazardous materials, including liquid oxygen, and that compressed or liquid oxygen was always carried in the vans driven by plaintiffs.

[3] "The provisions of this section are not applicable to employees whose hours of service are regulated by: [¶] (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers; or [¶] (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers." (Cal. Code Regs., tit. 8, § 11020, subd. 3(J).) Lincare argued in its motions for summary judgment and/or summary adjudication *only* that plaintiffs were exempt from overtime compensation because their hours of service were regulated by section 1200 of

driving time of employees who transport hazardous materials, such as liquid oxygen.[4] Because plaintiffs transport hazardous materials, Lincare claimed they were exempt from the standard overtime pay rules set forth in Labor Code section 510. The trial court accepted this argument: "Pursuant to Wage Order 4-2001,[5] Plaintiffs are exempt from the overtime provisions of that Order. These provisions do not apply as the Plaintiffs were regularly transporting hazardous materials. Oxygen was always on their vehicles. Defendant has met its burden. Plaintiffs have not raised a triable issue of material fact."

■  As relevant to this appeal, the 2002 Update of the DLSE (Division of Labor Standards Enforcement) Enforcement Policies and Interpretations Manual (Revised) (Enforcement Manual) provides: "The IWC exemption only applies to employees whose regular duty is that of a driver, not any other category of worker. The policy would cover employees regularly employed as relief drivers or as assistant drivers. However, *any driver who does not drive or operate a truck for any period of time during an entire workday is entitled to overtime premium compensation for all overtime hours worked performing duties other than driving during that day.* [Citation.]"

---

title 13 of the California Code of Regulations. Lincare did not argue plaintiffs' hours of service were regulated by the United States Department of Transportation regulations, and we do not address whether such an argument might have merit.

[4] "Motor carriers and drivers engaged in interstate commerce and the driver of a vehicle transporting hazardous substances or hazardous waste, as those terms are defined in Section 171.8 of Title 49, Code of Federal Regulations, shall comply with the federal driver hours-of-service regulations contained in Title 49, Code of Federal Regulations, Part 395, as those regulations now exist or are hereafter amended." (Cal. Code Regs., tit. 13, § 1212.5, subd. (b).)

Title 49 Code of Federal Regulations part 395.3 (2008) provides: "Subject to the exceptions and exemptions in § 395.1: [¶] (a) No motor carrier shall permit or require any driver used by it to drive a property-carrying commercial motor vehicle, nor shall any such driver drive a property-carrying commercial motor vehicle: [¶] (1) More than 11 cumulative hours following 10 consecutive hours off-duty; [¶] (2) For any period after the end of the 14th hour after coming on duty following 10 consecutive hours off duty, except when a property-carrying driver complies with the provisions of § 395.1(o) or § 395.1(e)(2). [¶] (b) No motor carrier shall permit or require a driver of a property-carrying commercial motor vehicle to drive, nor shall any driver drive a property-carrying commercial motor vehicle, regardless of the number of motor carriers using the driver's services, for any period after—[¶] (1) Having been on duty 60 hours in any period of 7 consecutive days if the employing motor carrier does not operate commercial motor vehicles every day of the week; or [¶] (2) Having been on duty 70 hours in any period of 8 consecutive days if the employing motor carrier operates commercial motor vehicles every day of the week. [¶] (c)(1) Any period of 7 consecutive days may end with the beginning of any off-duty period of 34 or more consecutive hours; or [¶] (2) Any period of 8 consecutive days may end with the beginning of any off-duty period of 34 or more consecutive hours." None of the exceptions or exemptions set forth in 49 Code of Federal Regulations part 395.1 applies in this case.

[5] See footnote 1, *ante*, regarding references to wage orders in this opinion.

(*Id.*, § 50.9.2.1, p. 50-11, italics added <http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf> [as of Apr. 3, 2009].)[6]

In support of this interpretation, the Enforcement Manual cites *Crooker v. Sexton Motors, Inc.* (1st Cir. 1972) 469 F.2d 206. The *Crooker* court determined that even de minimis interstate driving activity affected the safety of interstate motor vehicle operations, making the employee's activities subject to federal Department of Transportation regulations governing hours of work, and, therefore, the employee was exempt from the overtime provisions of the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.). (469 F.2d at pp. 209–210.) The court additionally determined that, during weeks where the employee did not perform any interstate driving activities, he would be entitled to receive overtime pay. (*Id.* at pp. 210–211.)[7]

A case from the United States District Court for the Northern District of California addressed a very similar factual situation to that presented in this case. In *Wamboldt v. Safety-Kleen Sys., supra,* 2007 U.S.Dist. Lexis 65683, an employee sued to recover overtime pay. The employee had been a customer service representative for Safety-Kleen Systems, Inc., and drove a vehicle transporting hazardous materials. (*Id.* at p. *21.) Safety-Kleen filed a motion for summary judgment, arguing the employee was exempt from California's overtime compensation laws because the exemption for a driver of hazardous materials applied. (*Id.* at pp. *10–*11.) As in this case, employer Safety-Kleen relied only on California regulations, not federal regulations, to support its claim that the employee was exempt. (*Ibid.*) The district court concluded the employer could not obtain summary judgment because there was a factual dispute as to how much of the employee's time was spent transporting hazardous materials, and therefore whether the driver's exemption had been triggered. (*Id.* at pp. *23, *27–*28.)

---

[6] Although not controlling, the DLSE's interpretation of the motor carrier exemption in the Enforcement Manual is instructive. (*Isner v. Falkenberg/Gilliam & Associates, Inc.* (2008) 160 Cal.App.4th 1393, 1399 [73 Cal.Rptr.3d 433].) We give to the Enforcement Manual whatever persuasive weight it carries. (*Sumuel v. ADVO, Inc.* (2007) 155 Cal.App.4th 1099, 1109 [66 Cal.Rptr.3d 622].)

[7] California and federal wage laws differ as to when overtime pay becomes available. Under California law, both daily and weekly hour totals are considered; under federal law, only weekly hour totals are considered.

Section 50.9.2.1 of the Enforcement Manual was amended in December 2006 to conform to California's daily overtime requirements. (Enforcement Manual Revisions <http://www.dir.ca.gov/dlse/DLSEManual/DLSE_EnfcManual_Revisions.pdf> [as of Apr. 3, 2009].) Because California's overtime law unquestionably required payment of overtime on a daily as well as a weekly basis while plaintiffs were employed by Lincare (assuming no exemption applied), it is irrelevant for our analysis whether the Enforcement Manual referred to "workday" or "workweek" with regard to determining the application of the driver's exemption.

In a later order denying a motion for reconsideration, the same court clarified its original holding, concluding, "the court finds that, under the proper legal standard, [the employee] would be entitled to overtime for days in which he did not transport hazardous materials." (*Wamboldt v. Safety-Kleen Sys.* (N.D.Cal., Mar. 17, 2008, No. C 07-0884 PJH) 2008 U.S.Dist. Lexis 20727, p. *26.)[8]

In order to obtain summary adjudication of the second cause of action in plaintiffs' second amended complaint based on the application of the driver's exemption, Lincare was required to present evidence showing that each plaintiff drove a vehicle containing hazardous materials for some period of time on each and every workday. Having reviewed the record de novo, we conclude Lincare failed to meet its initial burden, and the trial court erred in granting the motions for summary adjudication.

With respect to Gutierrez, Lincare's separate statement of undisputed material facts provided that "Gutierrez spent a significant portion of his time driving." In support of the motion, Lincare offered Gutierrez's deposition testimony, including the following: "Q . . . [¶] Were there ever any days when you were just in the—you stayed at the base or at the center and didn't go out on a route during the regular workday? [¶] A There was some occasions when there wasn't enough stops for two vans. One would stay there. [¶] Q Okay. And so is that kind of an unusual condition? [¶] A It happened once in a while." Lincare did not submit any evidence to establish Gomez and Talbot drove vehicles containing hazardous materials every day they were scheduled to work. Given the deposition testimony of Gutierrez, quoted *ante*, it is reasonable to infer that on some workdays, Gomez and Talbot, too, never drove Lincare's vehicles.

Additionally, in the evidence offered by Lincare in support of the motion, Talbot testified that he did not always have the Lincare van with him at home when he was on call. From this evidence, it could reasonably be inferred that Gutierrez and Gomez, as well as Talbot, worked for Lincare while not transporting hazardous materials or substances.

---

[8] The March 2008 order also considered and denied a second motion for summary judgment filed by Safety-Kleen Systems, Inc., which argued the second prong of the driver's exemption—that the employee's hours of service were regulated by the United States Department of Transportation—applied. (*Wamboldt v. Safety-Kleen Sys., supra*, 2008 U.S.Dist. Lexis 20727 at pp. *26–*27.) As noted *ante*, this prong of the exemption has not been argued by Lincare and will not be considered in this opinion.

## III.

### DEMURRER WITHOUT LEAVE TO AMEND OF CLAIM FOR BREACH OF EXPRESS CONTRACT

In the fourth amended complaint, plaintiffs alleged they had entered into contracts with Lincare, under the terms of which Lincare would pay them for work performed, including "a premium rate equal to one and one half PLAINTIFFS' regular rate of pay ('time and a half') for all time PLAIN-TIFFS worked beyond eight hours in a workday or 40 hours in a workweek." Plaintiffs alleged the terms of their contracts were communicated orally and in writing, and were "memorialized in [Lincare's] Employee Handbook" and in plaintiffs' paychecks.

The trial court sustained Lincare's demurrer to the cause of action for breach of express contract, without leave to amend. "Fifth cause of action for breach of express contract [¶] This Court has previously stated that 'the handbook contains no contractual language which would bind defendants. Indeed, the handbook contains language stating that it does not constitute a contract, so that employees could not properly rely on it as establishing any enforceable agreement between them and the defendant.' The Handbook simply does not support a cause of action for overtime wages. [¶] The language in the Handbook could not be clearer. There is a clear disclaimer."

Plaintiffs argue on appeal that in sustaining the demurrer, the trial court "erroneously ignored . . . other allegations and evidence concerning contract formation in the Fourth Amended Complaint."[9] Specifically, the complaint alleged Lincare actually treated plaintiffs as nonexempt employees by paying them overtime compensation, and plaintiffs' paychecks showing overtime payments memorialized Lincare's oral representations that they would be treated as nonexempt employees.

Neither the trial court's order sustaining the demurrer, nor Lincare's respondent's brief on appeal, addresses plaintiffs' allegation that the paychecks showing plaintiffs were paid for overtime hours memorialize an express agreement that plaintiffs would be treated as nonexempt employees. Even absent any allegations regarding the employment handbook, the fourth amended complaint contained sufficient facts to state a cause of action for breach of an express contract.

---

[9] Plaintiffs do not raise an argument regarding the trial court's analysis of the employment handbook, thereby conceding that analysis was correct. In several places, the employee handbook notes that it is not a contract for employment.

IV.

*SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION OF REMAINING CAUSES OF ACTION IN THE FOURTH AMENDED COMPLAINT*

The trial court granted Lincare's motions for summary judgment and/or summary adjudication as to the remainder of the causes of action in the fourth amended complaint. The court's tentative ruling granting the motions reads: "This Court has previously found that there is no express contract. The deposition testimony of the Plaintiffs show[s] that there was no promise made to pay other than the wages provided and therefore there is no implied contract or promissory estoppel. All of the other claims are derivative of the finding of some other type of agreement or obligation to pay other than the wages actually paid. [¶] Defendant has met its burden of proof. Plaintiffs have failed to raise a triable issue of fact. [¶] FIRST CAUSE OF ACTION FOR FAILURE TO PAY WAGES [¶] The fact that Plaintiffs agreed or didn't agree to be paid for the time they spent answering telephone calls after their regular shift is irrelevant. Plaintiffs must be paid for the hours worked. But as Defendant points out, and as Plaintiffs admit, by their requests to amend, Plaintiffs' claims were never based on hours worked over the eight-hour shift, but were always based on claims for on-call time when an eight-hour shift was not worked. [¶] Plaintiffs have had an adequate opportunity to plead their Causes of Action and have indeed re-alleged on several occasions after their attempts were found to be without merits in the past. As the Defendant argues, to allow Plaintiffs to again assert a new claim would be to start this Action all over. That is not fair to the Defendant, particularly after the Plaintiffs have seen and reviewed Defendant's Motion for Summary Judgment. Plaintiffs should file a new lawsuit if they wish to pursue this new theory. [¶] SECOND CAUSE OF ACTION FOR FAILURE TO PROVIDE ITEMIZED STATEMENTS [¶] This Cause of Action is derivative of a viable cause of action for wages. As there is none, this Cause of Action fails. [¶] THIRD CAUSE OF ACTION FOR FAILURE TO PAY WAGES UPON TERMINATION OF EMPLOYMENT [¶] This Cause of Action is derivative of a viable cause of action for wages. As there is none, this Cause of Action fails. [¶] FOURTH CAUSE OF ACTION FOR UNFAIR COMPETITION [¶] This Cause of Action is derivative of a viable cause of action for wages. As there is none, this Cause of Action fails. [¶] . . . [¶] SIXTH CAUSE OF ACTION FOR BREACH OF IMPLIED-IN-FACT CONTRACT [¶] As the evidence clearly shows that there is no basis for finding an implied contract, this Cause of Action fails. [¶] SEVENTH CAUSE OF ACTION FOR PROMISSORY ESTOPPEL [¶] As the evidence clearly shows that there were no promises made to support promissory estoppel, this Cause of Action fails." The trial court made the tentative ruling its final order.

We consider each cause of action in the fourth amended complaint in turn.

### A. First Cause of Action—Wage Claim Under California Code of Regulations, Title 8, Section 11020

The first cause of action in the fourth amended complaint seeks recovery for on-call time worked after a less-than-eight-hour-weekday shift. "PLAINTIFFS, and members of the PLAINTIFFS CLASS, frequently worked less than an 8-hour work shift, and subsequently were scheduled to work on-call. As will be articulated below, *it is this on-call time that is the subject of PLAINTIFFS' claim for unpaid straight-time wages*." (Italics added.) Lincare offered undisputed evidence that plaintiffs were paid for all the time they worked during their regular shifts, including overtime worked as part of the regular shifts, and were never on call after working less than a full eight-hour shift.[10]

Plaintiffs argued the trial court should not grant the motions for summary judgment because the court was required to liberally construe plaintiffs' claims in the fourth amended complaint, citing Code of Civil Procedure section 452. Plaintiffs also make this argument on appeal. Section 452 applies when the sufficiency of a pleading is challenged by means of demurrer or motion for judgment on the pleadings. It is irrelevant here, where we are considering a motion for summary judgment. (See *Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80, 93 [120 Cal.Rptr.2d 741] [contrasting use of Code Civ. Proc., § 452, which requires liberal construction of pleading to achieve substantial justice between parties, to "summary judgment proceeding based on evidence"].) Plaintiffs misunderstand the purpose of a motion for summary judgment, which is "to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 844.)[11]

---

[10] The separate statements of undisputed material facts filed by Lincare in support of its motions for summary judgment and/or summary adjudication were not included in the clerk's transcript on appeal. In response to an order of this court, counsel for plaintiffs submitted copies of the separate statements. On our own motion, we augment the record on appeal with the following documents, all of which were filed October 19, 2007, in *Gomez v. Lincare, Inc.* (Super. Ct. Orange County, 2008, No. 05CC00109): (1) statement of undisputed material facts in support of Lincare's motions for summary judgment or, in the alternative, summary adjudication as to Gutierrez's causes of action; (2) statement of undisputed material facts in support of Lincare's motions for summary judgment or, in the alternative, summary adjudication as to Talbot's causes of action; and (3) statement of undisputed material facts in support of Lincare's motions for summary judgment or, in the alternative, summary adjudication as to Gomez's causes of action. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

[11] In their oppositions to the motions for summary judgment, plaintiffs suggested that they could amend their complaint to provide additional "clarity" to the first cause of action by

■ Lincare met its initial burden on the statutory claim for failure to pay wages. Plaintiffs failed to meet their burden to establish a triable issue of material fact as to that claim. The trial court did not err in granting Lincare's motions for summary adjudication on this cause of action.

In any event, the language plaintiffs contend they would have added to the complaint, if permitted to amend it, in response to the motions for summary judgment would not have created a meritorious cause of action. Plaintiffs argue they are entitled to overtime wages for the entire time they were on call during the evenings and weekends waiting for patient calls, but when they were *not* actually responding to pages telephonically or in person. Plaintiffs are incorrect.

■ On-call waiting time may be compensable if it is spent primarily for the benefit of the employer and its business. (*Armour & Co. v. Wantock* (1944) 323 U.S. 126, 132 [89 L.Ed. 118, 65 S.Ct. 165] [time firefighters spent on call in the onsite fire hall was compensable, even though they spent time in "idleness" and "amusements"].) A determination of whether the on-call waiting time is spent predominantly for the employer's benefit depends on two considerations: (1) the parties' agreement, and (2) the degree to which the employee is free to engage in personal activities. (*Owens v. Local No. 169* (9th Cir. 1992) 971 F.2d 347, 350–355.)

Lincare's written on-call policy provided, in relevant part: "The Service Representative on-call will be available via telephone or company-provided beeper to provide service at all times as follows: [¶] • Telephone response within 30 minutes [¶] • On-site response within 2 . . . hours as necessary." By accepting and/or continuing employment, plaintiffs impliedly agreed to the on-call policy terms. (See *Owens v. Local No. 169, supra*, 971 F.2d at p. 357.) The Ninth Circuit Court of Appeals provided a nonexclusive list of factors, none of which is dispositive, to determine whether the employee was free to engage in personal activities: "(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time."

"add[ing] a sentence saying that Plaintiffs seek, in the alternative to their contract-based claims, pay at the minimum wage rate for all hours worked without pay from Defendant, including all hours that Plaintiffs were assigned to on-call shifts." The record on appeal does not reflect that plaintiffs filed a motion for leave to amend (Cal. Rules of Court, rule 3.1324), or sought a continuance of the motions for summary judgment (Code Civ. Proc., § 437c, subd. (h)).

(*Id.* at p. 351, fns. omitted.) In sum, these factors favor a determination that the on-call waiting time did not unduly restrict plaintiffs' ability to engage in personal activities. Lincare did not impose an onsite living requirement, and did not impose excessive geographic restrictions on plaintiffs. The time limits set for plaintiffs' responses to pages—30 minutes to respond by telephone and two hours to respond to a patient's home—are not unduly restrictive. On-call employees were permitted to trade on-call responsibilities. Plaintiffs were provided pagers by Lincare. Plaintiffs' depositions confirmed they had engaged in some personal activities while on call; we do not believe plaintiffs' unilateral decisions to avoid personal activities while on call changes the fact that they did engage in some activities and could have continued to do so.

### B. Second Cause of Action—Failure to Furnish Itemized Statements in Violation of Labor Code Section 226

The second cause of action in the fourth amended complaint alleges Lincare violated Labor Code section 226 by failing to provide plaintiffs with itemized statements accurately showing the total number of hours worked, the applicable hourly rates, and the corresponding number of hours worked at each hourly rate. The gist of plaintiffs' claim is that because Lincare did not pay them overtime or keep accurate records of the entirety of plaintiffs' on-call time, the statements provided to plaintiffs were inaccurate; plaintiffs do not claim they were not provided any wage statements by Lincare.

Subdivision (a) of Labor Code section 226 provides, in relevant part: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees . . . an accurate itemized statement in writing showing . . . (2) total hours worked by the employee, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." In its motions for summary judgment and/or summary adjudica-tion, Lincare argued this cause of action was wholly derivative of a valid claim for wages and, because all wage claims had been disposed of, it, too, should be resolved against plaintiffs. In opposition, plaintiffs agreed this was a derivative cause of action. Because we have concluded, *ante*, that Lincare failed to meet its initial burden of proof on the motions for summary adjudication regarding the driver's overtime exemption defense, the cause of action for failure to furnish itemized wage statements survives.

### C. Third Cause of Action—Failure to Pay Wages at End of Employment in Violation of Labor Code Section 203

The third cause of action in the fourth amended complaint alleges Lincare violated Labor Code section 203 by failing to pay plaintiffs overtime

compensation when they quit or were terminated from their employment. "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." (Lab. Code, § 203, subd. (a).)

The trial court concluded this claim was derivative of plaintiffs' claim for unpaid wages, and, because no such claim remained, the court found this claim failed as well. On appeal, the parties agree that this claim stands or falls with a claim for wages. Because we have concluded, *ante*, that Lincare failed to meet its initial burden of proof on the motions for summary adjudication regarding the driver's overtime exemption defense, the cause of action for failure to pay wages upon termination of employment survives.

### D. *Fourth Cause of Action—Unfair Competition*

Plaintiffs alleged Lincare violated Business and Professions Code section 17200 et seq. by failing to pay them for the hours they actually worked, and by failing to pay them overtime compensation. As with the claims for failure to pay wages upon termination of employment and failure to provide itemized statements, Lincare argued in its motions for summary judgment and/or summary adjudication that the unfair competition claim was derivative of a valid wage claim, and must be resolved in its favor. Because we have concluded, *ante*, that Lincare failed to meet its initial burden of proof on the motions for summary adjudication regarding the driver's overtime exemption defense, the cause of action for unfair competition based on Lincare's alleged failure to pay plaintiffs for the hours worked survives.

### E. *Sixth Cause of Action—Breach of Implied-in-fact Contract*

Plaintiffs' claim for breach of an implied-in-fact contract alleges Lincare's payment of overtime compensation on some occasions created a term of a contract between Lincare and plaintiffs that Lincare would pay plaintiffs for all hours worked and would pay plaintiffs a premium rate for overtime hours.

■ "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." (*Yari v. Producers Guild of America, Inc.* (2008) 161 Cal.App.4th 172, 182 [73 Cal.Rptr.3d 803].)

Lincare offered evidence that (1) plaintiffs were promised they would be paid and were in fact paid for on-call time when a service visit was required;

(2) plaintiffs were never promised they would be paid for on-call time resolving customer questions by telephone when a service visit was not required or when they were on call but not responding to pages; and (3) plaintiffs were not aware of anyone who was promised he or she would be paid, or was paid, for on-call time resolving customer questions by telephone when a service visit was not required or when he or she was on call but not responding to pages.

In their oppositions to the motions for summary judgment and/or summary adjudication, plaintiffs offered the deposition testimony of Lincare's person most knowledgeable[12] to the effect that Lincare pays its service representatives overtime compensation for working more than eight hours a day or more than 40 hours a week, and posts this information in its service centers. That Lincare paid plaintiffs overtime when they worked more than eight hours in a day is undisputed. It is also undisputed that these overtime payments were for extra hours at the end of an eight-hour workday, not for on-call hours. The trial court correctly granted the motions for summary adjudication on this cause of action.

F.  Seventh Cause of Action—Promissory Estoppel

Similar to the cause of action for breach of an implied-in-fact contract, plaintiffs' cause of action for promissory estoppel alleges Lincare promised plaintiffs it would pay them for all hours worked, and promised to pay them overtime compensation if they worked more than eight hours per day or 40 hours per week. This cause of action also alleges that, based on those promises, plaintiffs agreed "to work 'on call' shifts lasting an entire week and requiring telephonic and in-person service visits at nights and on weekends, all in addition to their regular weekly shifts."

Lincare's motions for summary judgment and/or summary adjudication offered the identical allegedly undisputed evidence against the cause of action for promissory estoppel as it did against the cause of action for breach of an implied-in-fact contract.

Lincare's motions for summary judgment and/or summary adjudication on the cause of action for promissory estoppel did not address the allegation that Lincare had promised to pay plaintiffs for the time spent telephonically resolving customer issues while on call. Lincare's written on-call policy, which was made a part of the trial court's record when presented in support of Lincare's first set of motions for summary judgment and/or summary

---

[12] Nothing in the appellate record informs us of the topic on which this person was the most knowledgeable.

adjudication, provides, in part: "All non-exempt service reps will receive normal pay for on-call hours worked. On-call hours worked is defined as the time spent by a service representative on a service call *or with an emergency phone call after the normal work day.*" (Italics added.) In its second set of motions for summary judgment and/or summary adjudication, Lincare failed to meet its initial burden to prove there was no triable issue of material fact on this cause of action. The trial court erred by granting the motions as to this cause of action.

■ Plaintiffs argue Lincare should be required to compensate them for time spent telephonically responding to patient calls during the evenings and weekends, when a service call to the patient's home was not ultimately required. Lincare argues this time was de minimis. "[I]n determining whether otherwise compensable time is de minimis, we will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." (*Lindow v. United States* (9th Cir. 1984) 738 F.2d 1057, 1063, italics omitted.) Considering these factors in this case, the appellate record contains no evidence regarding whether it would be difficult administratively to record the time plaintiffs spent responding to pages by telephone only. The evidence does show the additional work was regular; plaintiffs responded by telephone to calls from patients every evening and weekend day on which they were on call.

In support of its motions for summary judgment and/or summary adjudication in connection with the fourth amended complaint, Lincare offered evidence that plaintiff Gomez received a maximum of six pages per weekday and 10 pages per weekend day when on call, totaling a maximum of 50 pages during an on-call week. About half of the pages were resolved without an actual service call. Of these, 90 percent of the telephone calls took five to 10 minutes. The pages for which plaintiffs made return phone calls, but not service visits, therefore resulted in as much as 125 to 250 minutes—or between two and six hours—per week.

In their oppositions to the first set of motions for summary judgment and/or summary adjudication (in connection with the second amended complaint), plaintiffs offered evidence that each of them spent between six and nine hours per week responding telephonically to customer pages. In the trial court, Lincare did not dispute plaintiffs' evidence; instead, it argued there was no authority for plaintiffs to offer supplemental facts in opposition to a motion for summary judgment and/or summary adjudication. At oral argument, Lincare's counsel conceded the accuracy of plaintiffs' estimates of the time spent resolving customer pages by telephone, not resulting in service visits.

Both Lincare's and plaintiffs' calculations of the average uncompensated hours spent by plaintiffs telephonically resolving customer issues exceed a de minimis amount. Therefore, we must reverse the order on this cause of action.

## DISPOSITION

The judgment is affirmed in part, reversed in part, and remanded. The order granting the motions for summary adjudication of the second cause of action in the second amended complaint for statutory overtime is reversed. The order sustaining the demurrer to the fifth cause of action in the fourth amended complaint for breach of express contract is reversed.

The order granting the motions for summary judgment of the fourth amended complaint is deemed to be an order granting the motions for summary adjudication of the remaining individual causes of action in the fourth amended complaint. Such order granting the motions for summary adjudication of the first and sixth causes of action, for failure to pay wages and for breach of an implied-in-fact contract, is affirmed. Such order granting the motions for summary adjudication of the second, third, fourth, and seventh causes of action, for failure to furnish itemized statements, failure to pay wages at the end of employment, unfair competition, and promissory estoppel, is reversed.

In the interests of justice, because each side prevailed in part on appeal, no party shall recover costs on appeal.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.

On April 28, 2009, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied July 22, 2009, S173548. George, C. J., did not participate therein.