Filed 8/5/14  Fowlkes v. Deutsche Bank CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TREMAINE FOWLKES et al., | B247298 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC484544) |
| v. | |
| DEUTSCHE BANK, | |
| Defendant; | |
| SHARK INVESTMENTS, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mark V. Mooney, Judge.  Reversed.

Craig Cawlfield, under appointment by the Court of Appeal, for Plaintiffs and Appellants.

Law Offices of Stephen E. Abraham and Stephen E. Abraham for Defendant and Respondent.

————————————————

Tremaine Fowlkes and Virgil Forbin appeal from the trial court's judgment sustaining the demurrer of their landlord Shark Investments, LLC, to their first amended complaint. Because we conclude the allegations of Fowlkes' and Forbin's first amended complaint were not fatally inconsistent with their original complaint's allegations, the court erred in sustaining the demurrer on that ground. Therefore, we reverse and remand for further proceedings.

## FACTS AND PROCEEDINGS

Because this appeal is from a demurrer, we recite the facts as stated in appellants' complaint without judging their veracity. In November 2010, appellant Tremaine Fowlkes signed a three-year lease for a home on Rodgerton Drive in Los Angeles. In June 2011, Deutsche Bank National Trust, which is not a party to this appeal, took title to the house by non judicial foreclosure. The following month in July 2011, Deutsche and its agents began to intimidate and harass Fowlkes, by among other things, posting "No Trespassing" signs on the property and damaging door locks.

In September 2011, appellant Virgil Forbin moved into the house as Fowlkes's subtenant. (Forbin did not, however, enter into a written sublease until November 1, 2011.) On October 3, 2011, Deutsche's agent entered the house without giving notice to appellants and damaged their personal property. Two days later on October 5, 2011, Deutsche sent appellants a "Notice of Belief of Abandonment of Occupancy." To prevent additional intrusions into their home, appellants hired a private security guard for the premises.

On November 5, 2011, defendants cut off water, gas, and electrical utilities to the house. As stated in their original complaint, appellants allege the utility cut-off left "the Property uninhabitable to Plaintiffs and forc[ed] their departure from the premises." But in their first amended complaint—and this is the key point of dispute on appeal— appellants alleged the utility cut-off left "the Property uninhabitable to Plaintiffs and forc[ed] their *temporary* departure from the premises"—the word "temporary" being new to the amended allegation. According to appellants, after moving out of the house,

2

Forbin stayed for a few days with friends and in a motel until he installed an electric generator at the house and resumed living there.

Apparently to entice appellants to leave the property, on November 17, 2011, Deutsche sent a letter to appellants exploring the possibility of a settlement to return possession of the property to Deutsche. One month later on December 22, 2011, Deutsche sent a "Notice to Cure or Quit" to appellants demanding that they stop their loud parties and late-night noise. On December 29, 2011, Deutsche's attorney did a walk-through inspection of the house with Forbin. And finally, in January 2012, Deutsche offered to pay appellants' relocation expenses in return for their release of all claims, which appellants apparently rejected.

On May 16, 2012, appellants filed their complaint against Deutsche and its agents, Paul Dinkel and Re/Max of Santa Clarita doing business as V.E.R.E. Enterprises, Inc. The complaint alleged causes of action for declaratory relief, trespass, conversion, wrongful eviction, conspiracy to commit wrongful eviction, constructive eviction, conspiracy to commit constructive eviction, and intentional interference with contractual relations.[1]

Two days before appellants filed their complaint, Deutsche sold the house to respondent Shark Investments, LLC.[2] Appellants allege Deutsche's sale to Shark Investments was not an arm's length transaction, and that Shark Investments bought the house with actual or constructive knowledge of Fowlkes's existing three-year lease. Six weeks later on June 26, 2012, appellants discovered that new owner Shark Investments had changed the locks on the doors to the house, and over the next few days, Shark

---

[1]     The complaint also alleged causes of action for violation of Civil Code section 1954 (landlord's obligation to give tenant notice of intended entry) and injunctive relief, but those causes of action are not pertinent here because they are not alleged against respondent Shark Investments, LLC, in the operative first amended complaint.

[2]     Appellants' first amended complaint alleges that the sale took place "in or around May 2012" without being more specific about the date. Shark Investments asserts the sale took place on May 14, 2012, two days before appellants filed their complaint, and because appellants do not dispute that date, we accept it for purposes of our review.

Investments' employees removed Fowlkes's and Forbin's furniture from the home. On July 6, 2012, appellants named Shark Investments as a former Doe-defendant and on October 24, 2012, appellants filed their first amended complaint. The gist of their amended allegations involved stating that their departure from the house was temporary after Deutsche cut-off the utilities, and adding allegations directed against Shark Investments for wrongfully entering the property to change the locks and remove appellants' personal property following its acquisition of the house six weeks after appellants filed their original complaint.

Shark Investments demurred to the first amended complaint. It argued that appellants' allegation involving their departure from the house was fatally inconsistent with their purportedly remaining in possession of the home by continuing to occupy it. Shark Investments noted that appellants' original complaint alleged appellants "were forced from the property on November 5, 2011" and hired a security guard after the utilities were cut off, but the first amended complaint omitted mention of a security guard and alleged appellants returned to the property at some point and "continued to reside" there even after Shark Investments bought it in May 2012.

Appellants opposed the demurrer. They asserted that neither their complaint nor first amended complaint alleged they *abandoned* the property; rather, they departed from it because the loss of utilities made it uninhabitable, and the first amended complaint clarified that their departure was temporary.

The trial court sustained Shark Investments' demurrer. The court found the allegations in appellants' first amended complaint were fatally inconsistent with the original complaint, and could not be cured by amendment. This appeal followed.

## STANDARD OF REVIEW

"A demurrer must assume the truth of a complaint's properly pleaded allegations." (*Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 566, fn. 1.) "'We treat [a] demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be

judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment . . . . [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## DISCUSSION

The trial court sustained Shark Investments' demurrer because the court found the allegations involving appellants' departure from the property in their first amended complaint were fatally inconsistent with the allegations in their original complaint, and could not be cured by amendment. Appellants' original complaint alleged the property became uninhabitable after Deutsche cut-off all utilities, thus "forcing their departure from the premises." Shark Investments asserted, and apparently the trial court agreed, that appellants' allegation meant appellants abandoned the property never to return, thus defeating any cause of action predicated on continued possession or occupancy. Amending the allegation in the first amended complaint to allege their departure was "temporary," was according to Shark Investments, a sham that the trial court properly disregarded. (*Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1061 ["sham-pleading doctrine" prohibits plaintiffs from amending complaint without explanation to avoid demurrer].)

Appellants contend the court erred because it disregarded the legal rule that courts must liberally construe allegations in a complaint when ruling on a demurrer. (See, e.g., *Gomez v. Lincare, Inc.* (2009) 173 Cal.App.4th 508, 522; Code Civ. Proc., § 452.) We agree. Liberally construed, the allegations of appellants' original complaint and first amended complaint can be harmonized to state the following as the gist of appellants'

5

claims[3]:  Fowlkes signed a three-year lease in November 2010; Forbin sublet a bedroom in September 2011; Forbin (and perhaps Fowlkes if he still lived in the house) moved out after Deutsche cut-off the utilities; Forbin later returned, but apparently Fowlkes did not; Deutsche tried to entice or force Forbin to move out by exploring the possibility of a settlement to return possession of the property, by serving a "Notice to Cure or Quit," and by offering to pay Forbin's relocation expenses; the efforts to force appellants out were unsuccessful because Forbin remained in the house until at least June 2012, when Shark Investments removed appellants' furniture when it became the property's new owner six weeks after appellants filed their original complaint.  Against this series of events, the addition in the first amended complaint—or omission from the original complaint—of the word "temporary" to describe appellants' departure from the property after the utilities were cut-off does not create a fatal inconsistency rendering the complaint a sham.  At worst, it arguably creates an ambiguity which discovery and evidence might clarify, but is not properly resolved by demurrer.

---

[3]     Shark Investments asserts the record on appeal is inadequate for review, obligating us to affirm.  Not so.  The complaint and amended complaint are sufficient for us to review the court's ruling sustaining the demurrer.  (See, e.g., *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.)  Shark Investments also asserts we should affirm because appellants do not discuss in their opening brief Shark Investments' purported status as a bona fide purchaser of the property.  In reviewing a demurrer, we do not consider defenses not apparent on the face of the complaint.  (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 947, p. 360.)  There are circumstances where a tenant's lease survives foreclosure.  (See, e.g., *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 273 [discussing state and federal statutory protections of tenancy following foreclosure].)  In any event, appellants dispute Shark Investments' status as a bona fide purchaser because they allege Shark Investments' purchase from Deutsche was not arm's length and was with notice of the lease, a dispute we cannot resolve on demurrer.

6

## DISPOSITION

The trial court is ordered to vacate its judgment of dismissal of respondent Shark Investments, LLC, and to enter a new order overruling the demurrer by Shark Investments, LLC.  Appellants to recover their costs on appeal.


                                        RUBIN, J.

WE CONCUR:


        BIGELOW, P. J.


        FLIER, J.

7